# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| KHALID ABDULQAADIR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:21-cv-00483-DGK ) |
| DENIS McDONOUGH, SECRETARY OF THE DEPARTMENT OF VETERANS AFFAIR, *et al.*, | ) ) ) ) ) |
| Defendants. | ) |

## ORDER GRANTING SUMMARY JUDGMENT

This is an employment discrimination case. Plaintiff Khalid Abdulqaadir alleges Defendants, United States Department of Veterans Affairs and Hon. Denis Richard McDonough, Secretary of Veterans Affairs discriminated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Rehabilitation Act of 1973.

Now before the Court is Defendants' motion for summary judgment. ECF No. 29. Holding Defendants have demonstrated entitlement to summary judgment on all claims, the motion is GRANTED.

## Undisputed Material Facts

With respect to the pending motion, the undisputed material facts are as follows.[1]

Plaintiff worked as a Program Support Assistant within the Veterans Affairs ("VA") Kansas City Healthcare System from September 2017 to November 2019. More specifically, Plaintiff worked at the Office of Community Care (the "Office"), which helps qualified veterans

---

[1] The Court has limited these facts to those that are undisputed and material to the pending summary judgment motion. Excluded are legal conclusions, argument presented as fact, and proposed facts not properly supported by admissible evidence. The Court has also included inferences from undisputed material facts and facts not controverted properly. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

obtain health care from providers in the local community when the VA itself cannot offer such care. As a Program Support Assistant, Plaintiff handled administrative matters such as employee timekeeping, keeping meeting minutes, and arranging for and assisting guests who visited the Office. Plaintiff was the only Program Support Assistant in the Office.

In early 2019, the Administrative Officer position became vacant in the Office, and the VA looked for a "detail" to fill the position. A "detail" is someone who temporarily fills a position until a permanent employee is found. Typically, when a detail position is available, the VA posts an announcement, with the position description attached, to solicit applications. Individuals then apply for the detail, and Human Resources (or a like-position) select a qualified applicant.

Plaintiff applied for the Administrative Officer position and was subsequently interviewed. However, on February 17, 2019, the VA selected Stephanie Rodriguez as a detail for the position. She permanently filled the position in April 2019. Ms. Rodriguez, as the Administrative Officer, was Plaintiff's first-line supervisor. Above Ms. Rodriguez in rank was Angela Frey, the Associate Chief Nurse for the Office at the Kansas City VA. Ms. Frey was relatively new to the position of Associate Chief Nurse at the time, as she detailed into the position on January 1, 2019, and permanently filled the position in June 2019.

In 2019, Ms. Rodriquez, overwhelmed with work, wanted to create a new "Customer Service Representative" position in the Office to shift some of her duties. Approval from the VA Medical Director and job classification specialists is needed before a position can be officially announced and filled. After collaborating with Ms. Frey, Ms. Rodriquez drafted a position description and functional statement for the proposed position and submitted it through the appropriate channels for approval. The new position was intended to handle veteran and outside provider issues including complaints, eligibility requirements, claim reimbursements, and

2

congressional inquiries into veteran care.

Plaintiff was interested in the new position (although at the time, the position was still pending approval) and believed that if he could get training for the duties of the job, he would be a strong candidate to interview and detail into the position. He asked Ms. Rodriguez about training opportunities for the new position. Plaintiff was under the impression that any such training was required via a Master Agreement/Collective Bargaining Agreement (the "Bargaining Agreement") between the Department of Veterans Affairs and the American Federation of Government Employees.

Since the position had not been approved yet and no formal training existed, Ms. Rodriguez personally showed Plaintiff how she handled congressional inquiries and veteran complaints. She also added Plaintiff to a VA email group discussing customer service inquires. At some point, Ms. Frey apparently gave Plaintiff extra job responsibilities, including handling a certain veteran's complaint. Plaintiff, given the gravity of the veteran's complaint and feeling as though he did not have the proper training, had a panic attack.[2] This triggered Plaintiff's PTSD and caused him to take medication. According to Plaintiff, Ms. Frey no longer gave him extra job responsibilities.

Plaintiff later asked to shadow a Patient Advocate at the actual VA hospital; however, both Ms. Rodriguez and Ms. Frey concluded that the role of a Patient Advocate was too different from the proposed Customer Service Representative position and denied his request. Plaintiff claims he requested to shadow a customer service representative working at the VA hospital though. Regardless, Ms. Rodriguez did not ask Ms. Frey or anyone on the leadership team, of which she

---

[2] This event, along with other events that Plaintiff cites in his Response and Suggestions in Opposition to Defendants' Motion for Summary Judgment, lack supporting documents. For instance, Plaintiff references a desk incident and call incident with an "irate veteran", ECF No. 30 at 11–12, but does not attach the relevant deposition pages in his response. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, . . . ."). "The court need consider only the cited materials . . . ." *Id.* at (c)(3).

3

Case 4:21-cv-00483-DGK   Document 34   Filed 11/10/22   Page 3 of 10

was a part of, for help identifying training for Plaintiff, nor did she look for training opportunities outside the VA. She did not see why the VA would want to pay for training outside the VA on a position that was not yet created.

In mid-2019, position classification specialists approved the description for the new Customer Service Representative position, and the Medical Director, Ms. Kathleen Fogarty, approved the position. On or about June 23, 2019, Ms. Fogarty exercised her authority to fill the position by reassigning another VA employee, Marcus M. Rhodes, to the job without consulting Ms. Rodriguez or Ms. Frey in the decision. Therefore, Ms. Rodriguez and Ms. Frey were not given an opportunity to interview anyone for the position. In fact, no applications were even accepted for the position. Ms. Rodriguez allegedly told Plaintiff that Defendants do not advance African Americans into leadership positions. Plaintiff is African American.

On July 1, 2019, Plaintiff contacted an EEO counselor alleging, amongst other things, that Defendants failed to promote and train him on the basis of his disability and religion. After unsuccessful counseling, Plaintiff filed a written complaint with the VA on October 2, 2019. On July 2, 2021, a Final Agency Decision was issued denying his claims, and Plaintiff initiated the present lawsuit.

Both Ms. Rodriquez and Ms. Frey deny knowing that Plaintiff is Muslim or that he has PTSD. According to the facts, however, Plaintiff applied for Family Medical Leave ("FMLA") sometime around March 2019 due to his PTSD. Ms. Rodriguez approved his FMLA request. Furthermore, Plaintiff contends that there were many opportunities for him and his colleagues to bring food into the office, of which Plaintiff could not eat due to his religious dietary restrictions, and therefore, Plaintiff's faith was known to others. Plaintiff left the VA on or about November 2019.

**Standard**

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court makes this determination by viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based "on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quotation omitted).

**Discussion**

Defendants move for summary judgment on each of Plaintiff's claims: religious-based discrimination for failure to select for the detail position and train (Count I) and disability-based discrimination for failure to select for the detail position and train (Count II). Before examining the arguments as to whether summary judgment is appropriate, it is crucial to first establish the analytical framework that guides the Court's decision.

Plaintiff can establish a prima facie case of discrimination either by (1) providing direct evidence of discrimination or (2) creating an inference of unlawful discrimination using the three-step framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

"[D]irect evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that

5

an illegitimate criterion actually motivated' the adverse employment action." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir.1997)). "'[D]irect' refers to the causal strength of the proof . . . ." *Id.* "A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial." *Id.*

In the absence of direct evidence, however, the *McDonnell Douglas* analysis applies. This analysis involves a three-step inquiry. *See, e.g.*, *Kozisek v. Cnty. of Seward, Nebraska*, 539 F.3d 930, 934-35 (8th Cir. 2008). First, a plaintiff must establish a prima facie case of discrimination. *Id.* at 934. Second, if a plaintiff makes out a prima facie case, he creates a presumption of unlawful discrimination, and the burden shifts to the defendant to come forward with evidence of a legitimate nondiscriminatory reason for its actions. *Id.* at 935. Third, if the defendant articulates such a reason, the burden returns to the plaintiff to show that the defendant's proffered reason is pretextual and that unlawful discrimination was the true reason for the adverse employment action. *Id.*

Here, Defendants challenge Plaintiff's claim via the *McDonnell Douglas* standard, finding Plaintiff "does not allege that he has direct evidence of religious or disability discrimination by the VA." Defs.' Mot. Summ. J. at 5, ECF No. 29. The Court agrees. In this case, Plaintiff has not produced strong (direct) evidence that any religious or disability discrimination motivated an alleged adverse employment action against him. As best the Court can tell, Plaintiff's "direct evidence" of discrimination is that Ms. Rodriguez and Ms. Frey knew that he was Muslin and had PTSD. However, the requisite causal link between any remarks reflecting religious or disability discrimination and actions taken by the VA against Plaintiff is lacking. Although Plaintiff claims

"Ms. Rodriguez told [him] that she believes the VA does not advance African Americans," he did not bring a claim for racial discrimination. Additionally, at best, this comment is a stray remark from a non-decisionmaker in the hiring process at issue, which does not amount to direct evidence of employment discrimination. *See, e.g.*, *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044-45 (8th Cir. 2011).

Therefore, Plaintiff bears the burden of establishing a prima facie case of discrimination under the *McDonnell Douglas* framework.

### A. Plaintiff's religious and disability discrimination claims for failure-to-select for the detail position are untimely.

Defendants move for summary judgment against Plaintiff's claim that he was discriminated against (both on the basis of religion and disability) when he was not selected for the detail position. Defs.' Mot. Summ. J. at 2–4. Plaintiff did not address the issue in his response and suggestions in opposition of Defendants' motion for summary judgment. *See* ECF No. 30. In the Eighth Circuit, "failure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009). As such, the Court grants Defendants summary judgment on Plaintiff's claim that he was discriminated against when Defendants failed to select him for the detail position.

### B. Plaintiff cannot establish a religious discrimination claim for failure-to-train.

To establish a prima facie case of religious discrimination under Title VII, "a plaintiff must show that: (1) [he] is a member of a protected class because of [his] religious beliefs; (2) [he] met [his] employer's legitimate expectations; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015).

Here, as a matter of law, Plaintiff did not suffer an adverse employment action. The Eighth Circuit holds that an "employer's denial of an employee's request for more training is not, without more, an adverse employment action." *Griffith*, 387 F.3d at 737; *see Watson v. McDonough*, 996 F.3d 850, 855 (8th Cir. 2021); *McNeil v. Union Pac. R.R. Co.*, 936 F.3d 786, 792 (8th Cir. 2019); *Box v. Principi*, 442 F.3d 692, 697 (8th Cir. 2006). To establish that an alleged failure-to-train was in fact an adverse employment action, Plaintiff must show that it caused him a "'material employment disadvantage,' such as termination, a cut in pay or benefits, or loss of future career prospects." *Robinson v. Am. Red Cross*, 753 F.3d 749, 755 (8th Cir. 2014).

Plaintiff does not cite caselaw to the contrary. Even more so, Plaintiff does not cite *any* caselaw that supports his position. While he may argue that he wanted training to make himself a more attractive candidate for the proposed Customer Service Representative position, there was no training available for the position,[3] and the VA never sought applicants for the position. The Medical Director, Ms. Fogarty, filled the position independent of Mr. Rodriguez and Ms. Frey. Rodriguez Depo. at 19–20, 24–35, Defs.' Exhibit G, ECF No. 29-7; Frey Depo. at 66–69, Defs.' Exhibit B, ECF No. 29-2. Even if formal training existed, and Plaintiff received said training, his chances for selection would not have increased since applications were never accepted for the position, nor were interviews conducted. Thus, Plaintiff's failure to receive training did not adversely affect him. For these reasons, Defendants are entitled to summary judgment on Plaintiff's religious discrimination claim for failure-to-train.

---

[3] In response to Defendants' argument that there was no applicable training for the position, Plaintiff cites the Bargaining Agreement which states, "[The VA] shall train bargaining unit employees on all new . . . procedures needed to perform the duties of their job." Pl.'s Exhibit 4, ECF No. 30-5. This argument is flawed, as the Bargaining Agreement does not reference training for *prospective employment opportunities*, but rather only the job an employee currently has. *See* Defs.' Reply Sugg. in Supp. of Mot. Summ. J. at 10–11, ECF No. 31.

8

## C. Plaintiff cannot establish a disability discrimination claim for failure-to-train.

Likewise, Plaintiff has no claim for failure-to-train based on disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. Decisions interpreting either the Rehabilitation Act or the Americans with Disabilities Act ("ADA") "are applicable and 'interchangeable' to claims under each statute." *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013); *see also Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364 (8th Cir. 2003); *Allison v. Dep't of Corr.*, 94 F.3d 494, 497 (8th Cir.1996). As such, in order to establish a prima facie case of disability discrimination, Plaintiff must establish that (1) he is a disabled person as defined by the ADA; (2) he was qualified to perform the essential functions of his job; and (3) he suffered an adverse employment action because of his disability. *See, e.g.*, *Faulkner v. Douglas Cnty. Neb.*, 906 F.3d 728, 732–33 (8th Cir. 2018); *Kozisek*, 539 F.3d at 934–35. Plaintiff did not cite applicable case law for discrimination claims under the ADA or Rehabilitation Act.[4]

Assuming for the sake of argument Plaintiff is disabled as defined by the ADA, and that Defendants were on notice of his disability, there is insufficient evidence in the record to establish that Plaintiff did not receive training *because of* his disability. As best the Court can tell, Plaintiff's only arguments are that (1) the Bargaining Agreement required Defendants to train him, and (2) Ms. Rodriguez knew Plaintiff had a disability based on an earlier FMLA request he submitted to her. Pl.'s Resp. & Sugg. in Opp. of Defs.' Mot. Summ. J. at 16–18. As explained above, Plaintiff's reading of the Bargaining Agreement is entirely incorrect. Additionally, Ms. Rodriguez's arguable knowledge of his disability is not, by itself, sufficient to raise an inference that he was not trained because of that disability.

---

[4] Instead, Plaintiff lists the "four (4) elements of a discrimination claim under Title VII" without citing any authority. Pl.'s Resp. & Sugg. in Opp. of Defs.' Mot. Summ. J. at 14.

9

Even if Plaintiff could establish a prima facie case, Defendants have clearly set forth legitimate, nondiscriminatory reasons for declining to train Plaintiff. For instance, there was no formal training available for the Customer Service Representative position, and the position was filled independently by the Medical Director, Ms. Fogarty, before any formal training could be implemented. Plaintiff has failed to show—or even set forth a single argument—that these reasons are pretextual. Accordingly, Defendants are entitled to summary judgment on Plaintiff's failure-to-train disability discrimination claim.

## Conclusion

For the reasons discussed above, Defendants' motion for summary judgment is GRANTED. Summary judgment is entered in Defendants' favor on all of Plaintiff's claims.

**IT IS SO ORDERED.**

Date:  November 10, 2022                 /s/ Greg Kays
                                                              GREG KAYS, JUDGE
                                                              UNITED STATES DISTRICT COURT